Filed 1/31/25  P. v. Gates CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083151 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD274056) |
| WILLIAM CHARLES GATES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

Following a bench trial, William Charles Gates was convicted of assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)), battery with serious physical injury (§ 243, subd. (d)), and battery by gassing (§ 243, subd. (9)(a)). The court also found true that Gates personally inflicted great bodily injury (§§ 1192.7, subd. (c)(8) and 12022.7, subd. (a)); was ineligible for parole (§ 1203, subd. (e)(4)); had served two prior prison terms (§ 667.5, subd. (b)); had a serious felony prior (§ 667, subd. (a)(1)); and had a strike prior (§§ 667, subds. (b)-(i), 1170.12, 668). The court sentenced Gates to 17 years in prison. Gates successfully appealed,[2] and at a resentencing hearing from which Gates was absent, the court sentenced him to 16 years in state prison and imposed the minimum amounts for the restitution fine and for fees and assessments.

Gates again successfully appealed his sentence, and we remanded the matter to superior court for resentencing so the court could recalculate custody credits and strike the one-year prison term enhancement. In addition, because we remanded the matter for resentencing, Gates had the opportunity to make additional arguments regarding the length of his sentence as well as any fees and assessments imposed. (See *People v. Gates* (Oct. 18, 2021, D077631) [nonpub. opn.].)[3]

At the latest resentencing, the trial court sentenced Gates to prison for 15 years, consisting of the middle term of three years for count 1 doubled by the prior strike, one-third the middle term on count 3 for one year, three years for the great bodily injury enhancement, and five years for the serious

---

[1]   Statutory references are to the Penal Code unless otherwise specified.

[2]   See *People v. Gates* (June 18, 2019, D074792) [nonpub. opn.]

[3]   We granted Gates's request for judicial notice of the court's records in case Nos. D074792 and D077631.

prior felony. The court stayed a six year prison sentence for count 2 under section 654.

Gates appeals, contending the trial court prejudicially erred by failing to strike all but one of the enhancements as required by section 1385, subdivision (c)(2)(B) as amended by Senate Bill No. 81 (Senate Bill 81) (2021-2022 Reg. Sess.). In addition, he claims the court applied an overly broad public safety exception when exercising its discretion under section 1385.

The People argue that Gates's interpretation of section 1385, subdivision (c)(2)(B) is incorrect because that statute did not mandate that the trial court dismiss all enhancements but one. Additionally, the People maintain that the court did not abuse its discretion in declining to dismiss an enhancement based on public safety concerns.

After briefing of this matter was complete, our high court issued its opinion in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*).[4] We granted Gates's request to file a supplemental brief to address the impact, if any, of *Walker* on the instant action. Gates filed a supplemental brief, arguing that *Walker* required remand of this matter so the trial court could exercise its discretion under the new caselaw and his attorney could make the proper

---

[4]    The question on review in *Walker* was: " 'Does the amendment to . . . section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances . . . create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?' " (*Walker, supra,* 16 Cal.5th at p. 1031.) The parties in *Walker* subsequently agreed in briefing before the high court that the Court of Appeal had misinterpreted the language as imposing a rebuttable presumption. (*Id.* at p. 1029.) Thus, in *Walker*, the court considered the parties' dispute over "the proper construction of that phrasing and its impact on a trial court's authority under section 1385, subdivision (c)." (*Ibid.*)

arguments based on *Walker*. The People filed a supplemental brief, asserting remand was unnecessary.

We agree with the People and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Underlying Facts of Gates's Offenses*[5]

"On October 4, 2017, Andrew B. was in line for dinner at the St. Vincent De Paul homeless shelter in San Diego when Gates sucker punched him in the face. Andrew momentarily lost consciousness as a result of the upper cut to his face. He suffered two black eyes and whiplash, became dizzy and bled profusely.

"Andrew identified Gates as the assailant.

"Two security officers witnessed the incident. Joshua Presley saw Gates run at Andrew before striking. Presley recognized Gates, who had been a resident for about five months and did not have privileges to eat dinner there that day. Normally Gates was well mannered, but that day Gates seemed to be under the influence. After he struck Andrew, Gates delivered a roundhouse kick, during which time Presley grabbed Gate's leg to take him to the ground.

"After Gates was cleared by medical personnel and transported to jail, he spat in the face of Corporal John G. while being fingerprinted, and police placed a spit rag on him to prevent further spitting." (*People v. Gates, supra*, D077631.)

---

[5] We begin with a brief description of the underlying facts of Gates's offense to provide some context for the court's resentencing conclusions. We take the facts verbatim from our previous unpublished opinion, *People v. Gates, supra*, D077631.

4

*Gates's Probation Reports*[6]

The probation report outlines Gates's criminal history as follows: "a 1981 conviction for petty theft (§ 484); a 1982 conviction for burglary (§ 459); a 1983 misdemeanor conviction for being under the influence of a controlled substance (Health & Saf. Code, § 11550); a 1984 conviction for attempted burglary (§§ 459, 664); two 1985 misdemeanor convictions and one 1986 misdemeanor conviction for providing false identification to police (§ 148.9); a 1985 misdemeanor conviction for obstructing/resisting arrest (§ 148) and being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (b)); a 1985 misdemeanor petty theft conviction (§§ 484, 488); the 1987 strike prior/serious felony prior conviction, for robbery (§ 211); a 1998 infraction and a 2000 misdemeanor for disturbing the peace (§ 415); a 2002 misdemeanor for a consuming alcohol from an open container (San Diego Mun. Code, § 56.54, subd. (b); Bus. & Prof. Code, § 25620); a 2002 misdemeanor criminal threats conviction (§ 422); a 2003 misdemeanor conviction for repossessing land after being removed (§ 419); a 2005 conviction for possessing and selling marijuana (Health & Saf. Code, §§ 11360, subd. (a), 11359); one 2011 and one 2017 misdemeanor battery conviction (§ 242); and a 2013 conviction for resisting an executive officer (§ 69)."

A supplemental probation report also describes an interview with Gates, during which he denied any involvement in the instant offenses and claimed that "the District Attorney and others have conspired to 'frame' him."

---

[6] At the most recent resentencing hearing, the trial court considered the probation report and supplemental probation report.

*The Most Recent Resentencing Hearing*

On October 31, 2023, Gates's trial counsel filed a sentencing memorandum. There, counsel argued, "Consistent with the dictates of Section 1385, this Court should dismiss, all but one" enhancement. Moreover, as part of her argument, she equated a strike with an enhancement.

On November 7, 2023, the prosecutor filed a sentencing memorandum. There, he contended that neither the serious felony prior enhancement nor the great bodily injury enhancement should be dismissed, as doing so would endanger public safety. The prosecutor further asserted, "Although both subdivisions (c)(2)(B) and (c)(2)(C) [of section 1385] contain language that the enhancement 'shall be dismissed,' case law is clear that the trial court retains discretion [not] to do so when dismissing the enhancement would 'endanger public safety.' " Additionally, citing *People v. Burke* (2023) 89 Cal.App.5th 237 (*Burke*), the prosecutor maintained that a strike is not an enhancement subject to section 1385, subdivision (c), but rather an alternative sentencing scheme.

On November 9, 2023, defense counsel filed a motion to dismiss the strike allegation under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). Without disclaiming her position that a strike is an enhancement, she asserted that the trial court could exercise its discretion to dismiss a strike prior in furtherance of justice.

On the same day, the trial court held Gates's third sentencing hearing. The trial court explained that it read the sentencing memoranda and the *Romero* motion. Both parties and the trial court agreed that current sentencing law governed and that the trial court should consider how Gates had been behaving in prison.

Defense counsel said: "So in 1385 under the new sentencing law, there is a discussion about all—when there are multiple enhancements alleged in a single case, all but one should be dismissed. The caveat to that is unless the Court can find that the individual would be a danger to public safety." After pointing out that the Supreme Court might soon weigh in on how to interpret section 1385, counsel reiterated that it was the trial court's discretion to determine whether Gates posed a public safety risk.

Defense counsel argued that Gates would not be a danger to public safety because he has been in fire camp[7] without incident, he has committed to staying off drugs, dismissing an enhancement would not result in his immediate release, the robbery underlying his strike/serious felony prior happened over 36 years ago when he was 24 years old, and most of his crimes since then were misdemeanors.

In response, the prosecutor acknowledged that Gates's robbery conviction was remote in time and that he committed no offense while in prison. Nevertheless, the prosecutor urged the trial court to find that striking an enhancement would endanger public safety because Gates's lengthy criminal history involves assaultive and violent conduct, including criminal threats, batteries, attacking a stranger with a 30-inch metal pole, and spitting in an officer's face, as well as, in the present case, sucker punching a stranger so hard that he lost consciousness and again spitting in an officer's face.

---

7    The California Department of Corrections and Rehabilitation (CDCR), in cooperation with the California Department of Forestry and Fire Protection and the Los Angeles County Fire Department, jointly operates 35 conservation camps, commonly known as fire camps, located in 25 counties across California. CDCR employees oversee the fire camps, which are all minimum security facilities.

After the parties concluded argument, the court provided a very detailed explanation of its consideration of the salient issues and Gates's new prison sentence:

> "Okay. So I think, number one, that Mr. Gates should be commended to have gotten himself into Fire Camp and to have been able to maintain himself there. But I believe—I'm just going to go right to the heart of it—that he is a danger to public safety, and I'm going to try to explain why.

> "A lot of it is related to his prior history, but a lot of it is also—I watched him testify. And after over 36 years of doing this, I've heard a lot of people testify. And I've seen a lot of different scenarios. And his complete denial about his involvement in both offenses was pretty mind boggling, I think, in the sense that he—his perceptions of things—it's like if he says it often enough, then it becomes real that he wasn't there, meaning the part at St. Vincent, or he didn't spit. It wasn't him. It was all a set-up. It's rationalization.

> "Now, could some of that be related to his drug issues? Absolutely. And I've given that part a lot of thought. And part of the reason why I want to make sure we're clear on his record is that he was sentenced to 8 years. Now, I understand that people can get drugs or substances that will be mind altering in prison. So just because somebody is in prison doesn't mean that they're not using.

> "But I—I think it's also significant that on his several trips to state prison—so there was the one in 1982, one in 1984, one in 1987, the one that involved two charges but the same case, basically, in 2005. And then his trip to state prison, the most recent one prior to this particular incident was 2013.

> "You know, there were no other offenses that occurred while he was in state prison. So I do think it is significant that when he is in prison, he is managed. And while he's in prison, I don't believe he's a danger to public safety. But when I look at his conduct when he gets out of prison and

8

the frequency and then combining it with what I heard and saw when he testified, I have no confidence at all that he will be able to hold it together.

"I do not know if there is some mental health issue there that is where—he is self medicating. But when he's in Fire Camp, I don't know when he's in Fire Camp if he's being medicated at all through the system. But even if he was, it wouldn't necessarily change the situation.

"Interestingly—and the People have mentioned a good portion of the factors I'm considering. The chart is very helpful. I agree in terms of his history. But if you look, he had a battery in May of 2017. And that was what, four months, five months before this particular instant offense.

"He, by his conduct is—he hits these irrational moments where he can just lash out at anybody. So it's unpredictable. And his reaction in terms of the spitting, again, is connected to that irrational behavior at least having to do with the PC69.

"The way in his—his rationalization when he testified and continued to say the same thing to the probation officer really does not bode well for someone rehabilitating. Now, is it always possible? Yes. Having said that, he did an 8-year commitment, which is probably—for our discussion I'll make it a 4-year time in state prison, which is not too dissimilar from where he is, I suppose, now.

"But when he got out, he goes back to committing the same types of violent activities. And it's not—doesn't have to be felony violence to make him a danger to the community, and it does tend to escalate.

"I mean his—his sucker punch, as one keeps being called at St. Vincent de Paul, could have been a simple battery except for the way it occurred and then the damage that was done. And so it's a continuation of repeated behavior over an extended period of time.

"I just believe strongly that he is a danger to public safety. And because of that, obviously, I would deny a *Romero*

motion. So I'm going to formally deny that. And then the request to strike it under the new sentencing law is denied because I believe that he is a danger.

"I'm not even going to rule as to whether a strike is an enhancement. I think that's going to be decided later on down the road, and the result would be the same whether it's an enhancement or not. And I'm trying to—trying to add some finality to this. Because if I thought it was only one way, I would make that ruling. But I would rule the same way because I do believe he is—he endangers the public safety by his conduct and his attitude about things. Attitude means his rationalization.

"He can be really quite a nice person, and so I'm not—when I say attitude, I don't want to convey something different except that when he gets angry, he explodes. And when he feels that need to hit out, he doesn't hesitate. He just hits out. And so hence my ruling. And I do think that when he's released, the odds are, I would say beyond a reasonable doubt, we're using our customary standard, that he is again going to end up back in the same pattern again, sadly.

"And so I would hope that he is going to take advantage of the opportunities he has. It looks like he is. That this time might be the right combination of things where—to make a change. For his sake, I hope it does.

"But I am going to, at this point, go through the stages that I need to for purposes of the actual computation. And bluntly, I am going to be using what the People outlined for the clerk's purpose so that she can follow along that way.

"So the total term will be 15 years. And that's the mid term. And I am taking into consideration the, quote, presumption of the low term. But I think I've stated enough for the reasons why. With his history, I would not do the low term. And that's going to be doubled for 6 years with a strike.

"And then there's the 3 years for the 12022.7(a). And that makes it the 9 years and then the—the spitting as

10

two—well, actually Count 2 is 654'd.  So that's the battery.
It's mid term doubled, but it's going to be concurrent.  And
then the battery in Count 3, the gassing, is consecutive.
And that's one-third the mid, so it's one year.  And so with
the 5-year enhancement, that's 15 years in state prison.

"This is the judgment and sentence of this Court, that the
defendant will be imprisoned for the 15 years as I've
indicated in state prison."

Gates timely filed a notice of appeal.

## DISCUSSION

Section 1385 governs a trial court's discretion to dismiss various
elements of an action or sentence on its own motion.  This includes the ability
to dismiss all or any portion of an action, including enhancements and prior
strikes.  (§ 1385, subds. (a)–(c); *Romero, supra*, 13 Cal.4th at p. 508.)  Under
section 1385, subdivision (a), the trial court "may . . . in furtherance of justice,
order an action to be dismissed."  This authority includes the power to "strike
or vacate an allegation or finding under the Three Strikes law that a
defendant has previously been convicted of a serious and/or violent
felony . . . ."  (*People v. Williams* (1998) 17 Cal.4th 148, 158.)

Effective January 1, 2022, Senate Bill 81 added subdivision (c) to
section 1385 to give trial courts more discretion to strike sentence
enhancements under certain conditions.  (See *Burke, supra*, 89 Cal.App.5th
at pp. 242–243.)  As relevant here, section 1385, subdivision (c) provides,
in part:  "(c)(1) Notwithstanding any other law, the court shall dismiss an
enhancement if it is in the furtherance of justice to do so, except if dismissal
of that enhancement is prohibited by any initiative statute.  [¶]  (2) In
exercising its discretion under this subdivision, the court shall consider and
afford great weight to evidence offered by the defendant to prove that any of
the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof

11

of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(1)–(2), as amended by Stats. 2021, ch. 721, § 1.)

The statute outlines nine mitigating circumstances the court must consider, including two that are pertinent in the instant action. One is when an enhancement is based on a defendant's prior conviction that is over five years old. (§ 1385, subd. (c)(2)(H).) Another relates to multiple enhancements. (§ 1385, subd. (c)(2)(B).) Specifically, subdivision (c)(2)(B) of section 1385 states that when "[m]ultiple enhancements are alleged in a single case . . . all enhancements beyond a single enhancement shall be dismissed."

Gates contends that we must remand this matter for resentencing yet again because the trial court erred, as a matter of law, by failing to strike all but one enhancement under the revisions to section 1385, subdivision (c)(2)(B).[8] Specifically, he claims the use of the word "shall" in this subdivision mandates dismissal. This argument has been rejected several times by the Courts of Appeal, including this court. (See *People v. Mazur* (2023) 97 Cal.App.5th 438, 444–446; *People v. Cota* (2023) 97 Cal.App.5th 318, 336–337; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 290–293 (*Mendoza*); *People v. Anderson* (2023) 88 Cal.App.5th 233, 238–240; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15–21.) Gates offers no persuasive argument to revisit the issue here. Thus, we summarily reject

---

[8] We summarily reject the People's argument that Gates's forfeited this issue by not raising it below. The People's forfeiture argument hinges entirely on Gates's trial counsel arguing that the court should dismiss all but one enhancement rather than arguing that it must. Although "should" is not as forceful of a word as "must," the record clearly indicates that the issue we decide here was raised below.

Gates's contention that the trial court was required, under section 1385, subdivision (c)(2)(B) to dismiss all enhancements but one.

Next, Gates maintains that even if we conclude that the trial court was not required to dismiss every enhancement but one, the trial court nevertheless abused its discretion by applying an overly broad public safety exception. Most of Gates's argument relies on *People v. Walker* (2022) 86 Cal.App.5th 386. Although our high court affirmed *People v. Walker*, it did so because the appellate court denied the appellant relief and the Supreme Court was not persuaded that the appellant was entitled to any relief under its "less restrictive interpretation of a trial court's authority pursuant to section 1385, subdivision (c)(2)." (*Walker, supra*, 16 Cal.5th at pp. 1029–1030.) However, the California Supreme Court did not adopt the reasoning from *People v. Walker, supra*, 86 Cal.App.5th 386 that Gates urges us to apply.

In *Walker*, our high court addressed how section 1385, subdivision (c)(2)'s "great weight" language impacted a trial court's sentencing discretion. Based on that section's plain language (*Walker, supra*, 16 Cal.5th at p. 1033), the court found it "clear that the structure [of section 1385, subdivision (c)] does not 'presume' [citation] an enhancement should be dismissed whenever an enumerated mitigating circumstance is present, but instead 'the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement' [citation] and this 'furtherance of justice' (§ 1385, subd. (c)(1)) inquiry requires a trial court's ongoing exercise of 'discretion' (*id.*, subd. (c)(2)). Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' " (*Walker*, at

13

p. 1033, citing *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098–1099 (*Ortiz*).)[9]

Disagreeing with the appellate court in *People v. Walker, supra*, 86 Cal.App.5th 386,[10] the California Supreme Court determined that the statute's plain language did not create a rebuttable presumption that can only be overcome by a finding that dismissal endangers public safety but "emphasize[d] . . . that in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Walker, supra*, 16 Cal.5th at p. 1033.)

The court proceeded to "consider what it means for a mitigating circumstance to 'weigh[ ] greatly in favor' . . . of dismissal." (*Walker, supra*, 16 Cal.5th at p. 1034.) The court adopted the *Ortiz* court's understanding as consistent with the statute's construction: "[A] trial court must 'engage[ ] in a holistic balancing with *special emphasis* on the enumerated mitigating factors,' in which the mitigating factors weigh 'strongly in favor

---

9  The court also cited in part to the Advisory Committee comment to California Rules of Court, rule 4.428, which addresses "[f]actors affecting imposition of enhancements" and provides: " 'Case law suggests that in determining the "furtherance of justice" the court should consider . . . the factors in aggravation and mitigation including the specific factors in mitigation of section 1385(c); and the factors that would motivate a "reasonable judge" in the exercise of their discretion.' " (*Walker, supra*, 16 Cal.5th at p. 1033.)

10  The court of appeal "conclude[d] that section 1385's mandate to 'afford great weight' to mitigating circumstances erects a rebuttable presumption that obligates a court to dismiss the enhancement unless the court finds that dismissal of that enhancement . . . would endanger public safety." (*People v. Walker, supra*, 86 Cal.App.5th at p. 391.)

of . . . dismissal . . . .' " (*Walker*, at p. 1036, quoting *Ortiz, supra*, 87 Cal.App.5th at p. 1096.) And "mitigating circumstances are entitled to 'increased significance and importance in the [court's] overall balancing of factors' under section 1385." (*Walker*, at p. 1036.) The court explained: "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id.* at p. 1036.)

The court concluded that its formulation gave "force to the 'great weight' standard: Pursuant to section 1385, subdivision (c)(2), absent a finding that dismissal would endanger public safety, a court must assign significant value to the enumerated mitigating circumstances when they are present. In practice, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker, supra*, 16 Cal.5th at p. 1037.)

We review for abuse of discretion the "court's determination that dismissal of [an] enhancement would endanger public safety." (*Mendoza, supra*, 88 Cal.App.5th at p. 298.) Further, in assessing sentencing issues, we

15

apply a presumption of regularity of judicial exercises of discretion. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) It is Gates's burden in the face of those presumptions to affirmatively demonstrate error. (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.)

We conclude Gates has not shown the trial court abused its discretion in resentencing him and by declining to dismiss all the enhancements but one. The court's explicit finding that such dismissal would endanger public safety, under *Walker*'s formulation of section 1385, subdivision (c)(2), means it was not required to "assign significant value to the [applicable] mitigating circumstances . . . ." (*Walker, supra*, 16 Cal.5th at p. 1038 ["absent a finding that dismissal would endanger public safety, a court must assign significant value to the enumerated mitigating circumstances when they are present"]; accord, *Mendoza, supra*, 88 Cal.App.5th at p. 296 ["if the court finds [under section 1385, subdivision (c)(2)] that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances"].) Likewise, the court did not err in failing to "afford great weight" to the fact that on of Gates's enhancements was based on a prior conviction over five years old. (§ 1385, subd. (c)(2)(H).)

The court also did not err in making its findings concerning public safety as Gates claims. Underlying Gates contention is the flawed argument that section 1385 requires the trial court to apply a rebuttable assumption that dismissal of an enhancement is in the furtherance of justice and that dismissal is required unless the court makes a specific finding that the resulting shorter sentence would endanger public safety. But our high court explicitly rejected that argument. (*Walker, supra*, 16 Cal.5th at p. 1033.) As such, we must reject it as well. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Further, we disagree with Gates's contention that the trial court's comments indicated it merely concluded that there existed a serious risk that Gates would commit future misdemeanors and not dangerous crimes that would endanger public safety. To the contrary, the court expressed concern about Gates's conduct when he gets out of prison, noting that it had "no confidence at all that he will be able to hold it together." In addition, the court observed that Gates "hits these irrational moments where he can just lash out at anybody." Also, the court explicitly mentioned its concern that when Gates is released from prison, he "goes back to committing the same types of violent activities," which "tend to escalate." Further adding the court's concerns is its finding that Gates does not take responsibility for his actions. And the trial court mentioned Gates's battery in 2017 and his force likely assault in 2018 and then concluded: "I just believe strongly that he is a danger to public safety." Against this backdrop, we disagree with Gates that the court was just concerned with Gates committing future misdemeanors that would not involve serious danger to the public if he was released.

Finally, we are not persuaded by Gates's arguments that, under *Walker*, he is entitled to remand. He asserts that "had counsel had the benefit of *Walker* at the time of . . . Gates's sentencing hearing, effective counsel would: (1) have objected to the trial court appearing to base its adverse public safety finding on evidence the court noted tended to demonstrate the offense below was connected to mental illness; and (2) prioritized the presentation of evidence and argument in support of such finding, beyond mere assertions with regard to . . . Gates having addressed his substance use disorder."

Yet, Gates's argument overlooks that fact that, at the time of the subject resentencing hearing, authority existed to object on the ground he

17

now offers. Before *Walker*, section 1385, subdivision (c)(2) informed the court to "consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present." One of the mitigating factors was (and remains) whether "[t]he current offense is connected to mental illness." (§ 1385, subd. (c)(2)(D).) That *Walker* might be additional authority for a legal argument that clearly existed at the time of the subject resentencing hearing does not make remand required on the record here.

Our conclusion remains the same even when Gates frames the issue under the Sixth Amendment, namely that he did not receive effective counsel because his counsel did not make an argument related to the role his mental illness played in the underlying offense.[11] The trial court referred to mental illness as a possible explanation for Gates's drug abuse, not as a basis for its adverse public safety finding as Gates claims. In the context of discussing Gates's drug abuse and the danger to public safety he would present when out of custody, the trial court noted: "I do not know if there is some mental health issue there that is where—he is self medicating. But when he's in Fire Camp, I don't know when he's in Fire Camp if he's being medicated at all through the system. But even if he was, it wouldn't necessarily change the situation."

---

[11] Gates does not explicitly claim his trial counsel was constitutionally ineffectively, but he definitely implies that he could make such a claim in the future. To establish a claim of ineffective assistance of counsel, a defendant must show: (1) his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) but for that deficient performance, there is a reasonable probability the outcome would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 694 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.)

Thus, the record does not indicate that Gates had a mental illness or, if he did, what role it played, if any, in the commission of the underlying crime. What is clear, however, is that the court did not use Gates's possible mental illness as an aggravating factor as Gates claims. Moreover, a defendant's unwillingness to medicate properly outside a custodial setting would be an appropriate consideration in assessing whether dismissing an enhancement would endanger public safety. (See § 1385, subd. (c)(2) ["Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety"].)

Accordingly, on the record before us, there does not appear grounds to object to the court's discussion of Gates self-medicating in custody to address a possible mental illness. (See *People v. Mitcham* (1992) 1 Cal.4th 1027, 1080 ["Counsel's failure to make a meritless objection does not constitute a deficient performance"].) Nor is there any indication that a failure to object to the court's discussion of Gates's possible mental illness or to offer further evidence of Gates's mental illness prejudiced Gates whatsoever. (See *Strickland, supra*, 466 U.S. at p. 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].) Indeed, had defense counsel emphasized Gates's mental illness, the trial court still maintained considerable "discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' " (*Walker*, 16 Cal.5th at p. 1033.)

Finally, because the trial court found that the dismissal of an enhancement would endanger public safety within a more restrictive discretionary framework than what is required under *Walker*, we are not

persuaded that Gates is entitled to any relief under our high court's less restrictive interpretation of a trial court's authority under section 1385, subdivision (c)(2). (See *Walker, supra,* 16 Cal.5th at pp. 1029–1030.)

In sum, we reject Gates's contentions that the trial court abused its discretion in declining to dismiss all his enhancements but one under section 1385.

DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


RUBIN, J.